952 F.2d 367
 139 L.R.R.M. (BNA) 2297, 120 Lab.Cas. P 11,093
 Martin M. ARLOOK, Regional Director of the Tenth Region of
the National Labor Relations Board, for and on
behalf of the NATIONAL LABOR RELATIONS
BOARD, Plaintiff-Appellant,
v.
S. LICHTENBERG & COMPANY, INC., and its Subsidiaries Samsons
Manufacturing and Delila Manufacturing,
Defendants-Appellees.
 No. 91-8162.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 16, 1992.
 
 William G. Mascioli, Richard A. Siegel, Ellen A. Farrell, N.L.R.B., Washington, D.C., Kenneth D. Meadows, Gaye N. Hymon, Ellen K. Hampton, N.L.R.B., Atlanta, Ga., for plaintiff-appellant.
 Jeffrey B. McClellan, Curtis L. Mack, Ira P. Bernstein, Atlanta, Ga., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Georgia.
 Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HILL, Senior Circuit Judge.
 BIRCH, Circuit Judge:
 
 
 1
 Ordinarily, labor dispute cases can be handled through the regular procedure authorized by the National Labor Relations Act (the "NLRA"); namely, administrative resolution by the National Labor Relations Board (the "Board") followed when necessary by enforcement in the Courts of Appeals. However, because the administrative machinery of labor dispute resolution moves slowly, interim injunctive relief is sometimes necessary in order to preserve the Board's remedial power. For such exceptional cases, Congress has provided the Board with the ability to petition a district court to enjoin any unfair practices pending the outcome of the Board's administrative review of those same practices. This limited authority is contained in Section 10(j) of the NLRA.
 
 
 2
 The Fifth Circuit, in decisions which are binding upon this court, has twice visited § 10(j). See Boire v. International Bhd. of Teamsters, 479 F.2d 778 (5th Cir.1973); Boire v. Pilot Freight Carriers, Inc., 515 F.2d 1185 (5th Cir.1975), cert. denied, 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976). In these cases, our predecessor court announced and applied the following standard for judging the propriety of § 10(j) relief: a district court should grant an injunction only when the Board has "reasonable cause" to believe that labor violations have occurred and only when equitable relief is "just and proper." See Teamsters, 479 F.2d at 787; Pilot Freight, 515 F.2d at 1189.
 
 
 3
 This court visits § 10(j) for the first time. Below, the Regional Director of the Tenth Region of the Board (the "Regional Director") petitioned the United States District Court for the Southern District of Georgia, seeking § 10(j) injunctive relief against a company allegedly engaged in a panoply of unfair labor practices. The Board claimed that there was reasonable cause to believe that the company had violated several provisions of the NLRA, and that equitable relief was just and proper because without an injunction the Board's ultimate resolution of the dispute would be ineffectual. The district court denied the requested equitable relief. After reviewing and clarifying this area of the law, we REVERSE the decision of the district court.
 
 I. BACKGROUND
 A. Factual Background
 
 4
 Defendant-Appellee S. Lichtenberg & Co. has two plants in Georgia, Samsons Manufacturing ("Samsons") and Delila Manufacturing ("Delila") (collectively, the "Company"). The Company employs about 600 workers to make curtains and drapes. The recent history of the Company evinces an intense, protracted labor dispute between the management and the workers. Beginning in late 1987, the employees began organizing with the help of the Amalgamated Clothing and Textile Workers Union, AFL-CIO, CLC (the "Union"). Despite management resistance and over management objections, the Union won a Board-conducted election by a large majority, and in October 1989 the Union was certified by the Board as the collective bargaining agent for the employees of the Company.
 
 
 5
 Between November 1989 and August 1990, the parties met often but could not agree upon a first contract. Over the same time period, the Company's management engaged in a variety of questionable tactics which would later be challenged as unfair labor practices by the Regional Director. Taken as a whole, the record displays reasonable cause for an impartial observer to conclude that these tactics were designed to thwart the organizational efforts of the Union. Several employees reported being threatened and chastised by management for engaging in Union activities. Over the course of four months, management fired nine employees who actively supported the Union: two long-tenured employees who were lodestars of the initial organizational efforts, two less senior Union activists, and five probationary employees.
 
 
 6
 In addition, the Company began to enforce two policies which could fairly be characterized as "new" rules. First, after an unsuccessful unilateral attempt to institute a more rigid absenteeism policy at Delila,[1] management initiated stricter enforcement of the "discretionary" absenteeism policy which governed the Delila workers. Second, even though workers had historically been permitted to return to their work stations after a second "work buzzer" sounded, management began disciplining employees who were not in position before the sound of the second buzzer. Eventually, the Company completely broke off negotiations with the Union at the end of July 1990, claiming that one employee's participation violated an alleged ground rule because she was the second representative from the same work department--even though the Company had negotiated earlier in the month despite a similar "violation" of that purported ground rule.[2]
 
 
 7
 Affidavits submitted by the Company told a different story. In general, the management denied threatening employees who engaged in Union activities, offered various legitimations for the discharges of the Union supporters, and claimed that it was merely enforcing previously existing absenteeism, buzzer, and bargaining rules. Believing otherwise, the Union took the employees' complaints about the Company's antagonistic conduct to the Regional Director. After a thorough review of these complaints, the Board issued an unfair labor practice complaint on October 5, 1990.
 
 B. Procedural Background
 
 8
 Less than three weeks after the complaint issued, the Regional Director petitioned the district court for injunctive relief pursuant to Section 10(j) of the NLRA, 29 U.S.C. § 160(j) (1988). The gravamen of the Board's petition was that, absent immediate injunctive relief, the Board's ultimate ability to correct the Company's alleged unfair practices would be threatened. The Board asserted that the Company's threats, chastisements, and terminations interfered with the employees' right to unionize and right to engage in collective bargaining, giving the Board reasonable cause to believe that the Company had violated Sections 8(a)(1) and 8(a)(3) of the NLRA.[3] The Board argued further that the Company's unilateral alterations of workplace rules and unfair refusal to bargain gave the Board reasonable cause to believe that the Company had violated Section 8(a)(5) of the NLRA.[4] Finally, the Board contended that given these violations of the labor laws and given the impact that the violations were having upon the employees and their attempts to organize, injunctive relief pursuant to § 10(j) was "just and proper," else the Company's conduct would nullify the final adjudication by the Board.
 
 
 9
 After hearing live testimony from employees of the Company and representatives of the Union, and after receiving evidence from both the Board and the Company, the district court entered an order on January 14, 1991, denying all of the requested equitable relief. The district court found that the Board had not established reasonable cause to believe that the Company had violated § 8(a)(5) of the NLRA. Although the district court did find that the Board had reasonable cause to believe that the Company had violated § 8(a)(1) and § 8(a)(3) of the NLRA, it ultimately concluded that it was not "just and proper" to grant any equitable relief against the Company. The Board appeals this determination.
 
 II. THE LEGAL STANDARDS
 A. The Duty Of The District Court
 Section 10(j) of the NLRA provides:
 
 10
 The Board shall have power, upon issuance of a complaint ... charging that any person has engaged in or is engaging in an unfair labor practice, to petition any district court ... for appropriate temporary relief or restraining order. [The district court] shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.
 
 
 11
 29 U.S.C. § 160(j) (1988). Congress enacted § 10(j) because administrative resolution "was so time-consuming that guilty parties could violate the Act with impugnity [sic] during the years of pending litigation, thereby often rendering a final order ineffectual or futile." Pilot Freight, 515 F.2d at 1188. In light of this purpose, the Fifth Circuit announced that a district court should grant the Board's request for § 10(j) equitable relief only when (1) there is reasonable cause to believe that the alleged unfair labor practices have occurred, and (2) the requested injunctive relief is "just and proper." Pilot Freight, 515 F.2d at 1188-89; Teamsters, 479 F.2d at 787. Accord Pascarell v. Vibra Screw Inc., 904 F.2d 874, 877 (3d Cir.1990); Aquayo v. Tomco Carburetor Co., 853 F.2d 744, 747 (9th Cir.1988); Gottfried v. Frankel, 818 F.2d 485, 493-94 (6th Cir.1987).
 
 
 12
 1. Reasonable cause.
 
 
 13
 The district court's role in determining whether or not there is reasonable cause to believe that labor violations have occurred is limited to evaluating whether the Board's "theories of law and fact are not insubstantial and frivolous." Pilot Freight, 515 F.2d at 1189. This evaluation has two components--a legal question, and a factual threshold. With respect to the first component, the standard is clear--the Board must present a substantial, nonfrivolous, coherent legal theory of the labor violation. Teamsters, 479 F.2d at 792.
 
 
 14
 However, as for what factual threshold must be passed in support of that legal theory, the standard is not clear. Pilot Freight spoke ambiguously about "theories of ... fact" and conceded that reasonable cause "depends upon the facts," 515 F.2d at 1189, but failed to pinpoint exactly the evidentiary showing required of the Board at this stage. We now make it clear that in order to prove reasonable cause, the Board must present enough evidence in support of its coherent legal theory to permit a rational factfinder, considering the evidence in the light most favorable to the Board, to rule in favor of the Board. Cf., e.g., Vibra Screw, 904 F.2d at 882 ("[T]aking the facts favorably to the Board, there must be sufficient evidence to support [the Board's legal] theory."); Kobell v. Suburban Lines, Inc., 731 F.2d 1076, 1085 (3d Cir.1984) ("If a substantial legal theory exists, do the facts satisfy the theory?").
 
 
 15
 2. Just and proper.
 
 
 16
 In addition to proving reasonable cause to believe that labor violations have occurred, the Board must show that equitable relief is "just and proper" given the circumstances of the case. Injunctive relief under § 10(j) is "just and proper" whenever the facts demonstrate that, without such relief, "any final order of the Board will be meaningless or so devoid of force that the remedial purposes of the [NLRA] will be frustrated." Pilot Freight, 515 F.2d at 1192. We decline to delineate an entire list of factors which might animate the district court's determination of equitable necessity. We note only that the relevant case law indicates that § 10(j) relief becomes "just and proper" when organizational efforts are highly susceptible to being extinguished by unfair labor practices, when unions and employees have already suffered substantial damage from probable labor violations, and when the violations reasonably found to have been committed will be repeated absent an injunction. See, e.g., Vibra Screw, 904 F.2d at 880, 881; Pilot Freight, 515 F.2d at 1194; Szabo v. P*I*E Nationwide, Inc., 878 F.2d 207, 210 (7th Cir.1989).
 
 
 17
 B. Appellate Review Of The District Court Decision
 
 
 18
 The district court's factual findings are reviewed under a clearly erroneous standard; its legal conclusions are reviewed for error. Pilot Freight, 515 F.2d at 1189. Therefore, the district court's factual findings underlying the determinations of reasonable cause and equitable necessity will not be disturbed unless clearly erroneous. Teamsters, 479 F.2d at 793. The district court's legal conclusions--whether or not the Board has a substantial legal theory for the alleged labor violations and whether or not the evidence would allow a rational factfinder to find in favor of the Board--are subject to our plenary review. Pilot Freight, 515 F.2d at 1189, 1191; Teamsters, 479 F.2d at 793. Finally, the district court's final conclusion regarding whether or not injunctive relief is "just and proper"--an exercise of the district court's equitable discretion--can only be reversed by this court if it constitutes an abuse of discretion. Pilot Freight, 515 F.2d at 1192; Teamsters, 479 F.2d at 793.
 
 III. DISCUSSION
 A. Reasonable Cause
 
 19
 To prove that the Board had reasonable cause to believe that S. Lichtenberg & Co. had committed labor violations, the Regional Director was required to expound a coherent legal theory and provide evidence showing that a rational factfinder could find for the Board on that theory. The district court found that the Board had reasonable cause to believe that the Company had violated § 8(a)(1) and § 8(a)(3) of the NLRA. That conclusion is not contested on this appeal.
 
 
 20
 However, the district court also concluded that the Board had not established reasonable cause to believe that the Company had violated § 8(a)(5) of the NLRA. Apparently, the district court did not question the substantiality of the Board's legal theory because that theory was supported by sound precedent. However, the district court did question the Board's evidentiary proffer, concluding that the "evidence clearly shows that [the Company] did not make unilateral changes in the work rules, and [the Company] did not unjustifiably refuse to bargain with the union." R1-16-5 n.3. This conclusion is incorrect, and demonstrates the district court's misconception about its proper role in a § 10(j) injunction proceeding. The district court should not have weighed all the evidence presented to it, in an effort to decide whether or not, in fact, the Company unilaterally changed the absenteeism and buzzer rules and unfairly refused to bargain with the Union. By doing so, a district court usurps the statutory powers of the Board. See Pilot Freight, 515 F.2d at 1191.
 
 
 21
 The district court should have decided whether or not the evidence, considered in the light most favorable to the Board, see Vibra Screw, 904 F.2d at 882, permitted the conclusion that a rational factfinder might eventually rule in favor of the Board. The record answers this question in the affirmative. There is substantial evidence that without notifying the Union or allowing the option of bargaining, the Company attempted to rewrite the absenteeism policy at Delila. When this failed, the Company simply began enforcing Delila's discretionary absenteeism policy in a stricter fashion. There is also evidence that without notifying the Union or allowing bargaining, the Company began disciplining employees for not being at their work stations before the sound of the second buzzer--punishment which had not been inflicted in the past and which surprised employees accustomed to beginning work immediately after the second buzzer. That management was reluctant to accept its duty to bargain was also supported by the evidence of its refusal to bargain with the designated representatives of the employees. This refusal was based upon a minor ground rule of questionable validity. As a matter of law, the district court should have found that this evidence established the Board's reasonable cause to believe that the Company had violated § 8(a)(5).
 
 B. Just And Proper
 
 22
 Having found that the district court erred in failing to conclude that the Board had reasonable cause to believe that the Company had violated all three sections of the NLRA at issue in this case, we now turn to the district court's rulings regarding equitable necessity. The district court found that "[n]o evidence has been submitted [by the Board] to support a finding that the normal Board proceedings and remedies will be ineffective or meaningless" and therefore concluded that "the granting of interim injunctive relief would be improper." R1-16-7. The district court's evidentiary finding is clearly erroneous, and its conclusion regarding equitable necessity is an abuse of discretion.
 
 
 23
 1. The evidentiary finding.
 
 
 24
 Far from presenting "no evidence" in support of its contention that a final Board order could become meaningless or ineffectual, the Regional Director presented exactly the kind of evidence which, when taken together, demands a conclusion of equitable necessity. First, the Board offered compelling evidence that the organizational efforts of the employees were vulnerable to management resistance. The Union was only recently certified by the Board and the employees were bargaining for their first contract. These two facts make bargaining units highly susceptible to management misconduct. See Paul Weiler, Striking a New Balance: Freedom of Contract and the Prospects for Union Representation, 98 Harv.L.Rev. 351, 354-63 (1984).
 
 
 25
 Second, the Board submitted substantial evidence of the actual damage inflicted by the management's actions in this case. Several employees testified before the district court that they had become afraid to wear Union clothing and stickers, afraid to participate in Union activities, afraid to actively recruit new Union members, afraid to become Union stewards. Some employees told the district court that they feared for their jobs. This environment makes it understandable that support for the Union has fallen substantially since the election. If this weakening of the organizational movement continues, it is likely that the Board will never be able to restore the status quo.
 
 
 26
 Third, the Board's evidence established that the damage will likely continue absent interim relief. There is direct and circumstantial evidence of the Company's intent to thwart the Union. Employees reported being told by management that their discipline originated with their Union support. In addition, the nine suspicious discharges render the inference of retaliation compelling. See Vibra Screw, 904 F.2d at 881; Eisenberg v. Wellington Hall Nursing Home, 651 F.2d 902, 905-06 (3d Cir.1981). Perhaps most significant is the pattern which becomes clear when one considers the evidence in totality. The Company has not merely fired a few employees, or altered one or two minor rules. Rather, the allegations span the gamut of labor violations. This history of management resistance, documented by the Board before the district court, makes future labor violations and its attendant impact likely. Without an injunction, the Board's ability to foster peaceful labor negotiations through normal procedures would be imperiled. The evidentiary finding to the contrary was, under these circumstances, clear error.
 
 
 27
 2. The conclusion regarding equitable necessity.
 
 
 28
 A district court abuses its discretion when it misconstrues its proper role, ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support. See Pullum v. Greene, 396 F.2d 251, 256 (5th Cir.1968); Kinney v. Pioneer Press, 881 F.2d 485, 493 (7th Cir.1989); Kasper v. Board of Election Comm'rs, 814 F.2d 332, 339 (7th Cir.1987). Such was the case here. As noted above, the district court's order makes it clear that the court focused on the merits of the dispute, failing to concentrate on the Board's satisfaction of the relevant legal standards. In addition, the district court largely ignored the Board's evidence offered to show equitable necessity. Finally, the district court cited two reasons for denying equitable relief, both of which lacked sufficient support in the record.
 
 
 29
 The first reason cited by the district court involved causation. The district court believed that the Union was as responsible for the "chilling" of organizational activities as the Company. This finding is clearly erroneous. To justify the denial of § 10(j) equitable relief on the basis of inappropriate union conduct (such as spreading rumors or sensationalizing wholly unsubstantiated charges against a company), the conduct must be documented in the record. In this case, there was no evidence submitted to the district court which would permit such a finding.
 
 
 30
 The second reason for the district court's denial of relief involved the Board's alleged delay in responding to the Company's suspicious actions. In Pilot Freight, the Fifth Circuit concluded that the Board's delay in prosecuting a § 10(j) petition could influence the "just and proper" determination if that delay so damaged the organizational efforts that interim relief could not be "any more effective than a final Board order." 515 F.2d at 1193. Here, the district court did not conclude that the Board's alleged delay so weakened the Union that even interim relief could not salvage it. Indeed, the district court implicitly found otherwise, stating that some Union activities remained "vibrant." R1-16-6. The record makes it clear that in spite of any delay by the Board, relief pursuant to § 10(j) would have been much more effective than waiting for a final Board order.
 
 
 31
 For these reasons the district court abused its discretion in refusing to issue equitable relief to the Board. The court's conclusion is understandable, given the ambiguities in this area of the law. However, under the unique facts of this case, the only proper decision was to enter appropriate equitable relief.
 
 IV. CONCLUSION
 
 32
 In clarifying the standards governing § 10(j) and reaching a decision in this case, we do not stray from the principle, followed by our predecessor court and every circuit court thereafter, that injunctive relief pursuant to § 10(j) is an extraordinary remedy, to be requested by the Board and granted by a district court only under very limited circumstances. Pilot Freight, 515 F.2d at 1192; Suburban Lines, 731 F.2d at 1091 & n.26; P*I*E Nationwide, 878 F.2d at 209-10. That essential principle is what dams the potential flood of § 10(j) injunction petitions. Rather, we believe that the Board adequately demonstrated the compelling nature of this case. We hold only that upon this record, it was error for the district court to conclude that the Board did not have reasonable cause to believe that the Company had violated § 8(a)(5) of the NLRA, and it was an abuse of discretion to deny all equitable relief.
 
 
 33
 Accordingly, we REVERSE the decision of the district court and REMAND the case so that the district court may issue appropriate injunctive relief consistent with this opinion.[5]
 
 
 
 [1]
 At the time collective bargaining between the parties began, Samsons had an absenteeism policy, but Delila did not. Management announced that the Samsons policy would apply to the Delila workers, then rescinded the new rule immediately
 
 
 [2]
 The bargaining hiatus lasted four months. The Company resumed bargaining shortly after the Regional Director petitioned the district court for § 10(j) injunctive relief
 
 
 [3]
 These provisions of the NLRA make it an unfair labor practice for an employer to "interfere with, restrain or coerce employees in the exercise of the[ir collective bargaining] rights" or to discourage union membership "by discrimination in regard to hire or tenure of employment or any term or condition of employment." 29 U.S.C. §§ 158(a)(1), 158(a)(3) (1988)
 
 
 [4]
 This provision makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representative of his employees." 29 U.S.C. § 158(a)(5) (1988)
 
 
 [5]
 Given our disposition of the case, it is unnecessary for us to decide the Board's motion for an injunction pending appeal, carried with the case by this court's order on April 2, 1991