**Roy H. GARNER, Acting Regional Director of the Twelfth Region of the National Labor Relations Board, for and on the behalf of the National Labor Relations Board, Petitioner,**

v.

**MacCLENNY PRODUCTS, INC., Respondent.**

No. 94–604–Civ–J–20.

United States District Court, M.D. Florida, Jacksonville Division.

July 25, 1994.

Peter J. Salm, N.L.R.B., Tampa, FL, for petitioner.

Stuart Newman, Jackson, Lewis, Schnitzler & Krupman, Atlanta, GA, for respondent.

David M. Prouty, New York City, for amicus curiae Amalgamated Clothing and Textile Workers Union, AFL–CIO.

## *ORDER*

SCHLESINGER, District Judge.

This cause is before the Court on a Petition for Injunction Under Section 10(j) of the National Labor Relations Act, as Amended ("the Act") (Doc. No. 1, filed June 23, 1994). On July 12, 1994, Respondent filed a Memorandum of Law in opposition (Doc. No. 15) and an Answer (Doc. No. 14).

On July 15, 1994, the Court heard oral argument from the parties on the Petition. The Court also heard argument from the Amalgamated Clothing and Textile Workers Union, AFL–CIO ("the Union"), whom the Court granted leave to appear as amicus curiae.

Respondent operates a clothing manufacturing facility in Macclenny, Florida ("the facility"), which is engaged in the business of cutting and distributing men's tailored wear. During 1993, the Union attempted to secure the support of the facility's employees for the purpose of being selected by the employees

as their bargaining representative. At one point in the fall of 1993, a majority of the employees within the alleged collective bargaining unit signed authorization cards designating and selecting the Union as their representative for collective bargaining with Respondent. On December 10, 1993, a formal election was held, at which election 58 votes were cast in favor of the Union, and 56 against. There were twelve challenged ballots, which are determinative of the outcome of the election.

The Union filed unfair labor practice charges against Respondent with the National Labor Relations Board ("the Board") on January 11, 1994, which charges remain pending.[1] The Union alleges that Respondent, from on or about October, 1993, to on or about December 10, 1993, violated of Sections 8(a)(1) and (3) of the Act. The Petition filed in this Court was brought on behalf of the Board for an injunction pursuant to Section 10(j) of the Act, codified at 29 U.S.C. § 160(j). In relevant part, the Act provides that:

> The Board shall have the power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

29 U.S.C. 160(j). As the court of appeals has stated, such interim relief "is sometimes necessary in order to preserve the Board's remedial power," as the underlying administrative process often "moves slowly." *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 369 (11th Cir.1992).

*Lichtenberg* sets forth the applicable standards. A district court may grant injunctive relief under Section 10(j) only when two criteria are met. Adapting precedent from the former Fifth Circuit, the court of appeals held that a district court should grant such an injunction only when *the Board* (not the Court) has " 'reasonable cause' to believe that labor violations have occurred and only when equitable relief is 'just and proper.' " *Id.* at 369 (quoting *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1189 (5th Cir.1975), *cert. denied*, 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976), and *Boire v. International Bhd. of Teamsters*, 479 F.2d 778, 787 (5th Cir.1973)). This standard is markedly different from the usual four-part test which a district court in this Circuit applies before issuing such similar extraordinary relief as a preliminary injunction. *See Bryan v. Hall Chemical Co.*, 993 F.2d 831, 835 (11th Cir.1993).

*Reasonable Cause*

In evaluating whether there is "reasonable cause" to believe that labor violations have occurred, the district court is limited to "evaluating whether the Board's 'theories of fact and law are not insubstantial and frivolous.' " *Lichtenberg*, 952 F.2d at 371 (quoting *Pilot Freight*, 515 F.2d at 1189). The Board must present enough evidence in support of a "substantial, nonfrivolous, coherent legal theory of the labor violation" which would allow a rational factfinder to rule in the Board's favor, after considering the evidence in the light most favorable to the Board. *Lichtenberg*, 952 F.2d at 371. As the court of appeals warned in *Lichtenberg*, it is not the duty of the district court to determine whether *in fact* the Section 10(j) respondent has violated the Act. *Id.* at 372. Rather, the court must limit its inquiry to whether the evidence placed before the court might permit a rational factfinder to "*eventually rule in favor of the Board.*" *Id.* at 373.

*Just and Proper*

Injunctive relief under Section 10(j) is "just and proper" whenever the facts demon-

---

1. A hearing was set before the Board for July 18, 1994, which was reset to August 29, 1994, after this Court set its July 15, 1994, hearing.

strate to the court that, without such relief, "any final order of the Board will be meaningless or so devoid of force that the remedial purposes of the Act will be frustrated." *Pilot Freight,* 515 F.2d at 1192. In *Lichtenberg* the court of appeals expressly declined to list any *requisite* factors for the district court's equitable determination. However, the court did state criteria used by other courts where Section 10(j) relief had been deemed "just and proper." Factors relevant to other courts' determinations were: (1) susceptibility of organizational efforts to unfair labor practices; (2) pre-Petition damage, if any, to union and employees from probable labor violations; and (3) likelihood of repetition of prior violations in absence of the sought injunction. *See Lichtenberg,* 952 F.2d at 372.

█ Contrary to Respondent's assertion in its Memorandum of Law filed in opposition to the instant Petition, the court of appeals did not list the above factors "in the conjunctive" as some sort of constituent checklist, each element of which a Section 10(j) petitioner is required to establish. Indeed, the panel in *Lichtenberg* specifically declined to "delineate an entire list of factors." 952 F.2d at 372. In listing instances where other courts found this "just and proper" requirement, the court of appeals could have used the word "or" instead of the word "and," as the court was merely reciting *examples* of other courts' holdings. Therefore, while the three aforementioned factors may be relevant and highly instructive in the instant determination of whether injunctive relief is "just and proper," Petitioner is not required to establish any or all of these elements.

*Discussion*

At the hearing Respondent conceded that Petitioner has reasonable cause to believe that labor violations occurred as alleged in the charges filed in the administrative proceeding now pending before the Board. Petitioner attached a copy of the Amended Complaint filed in that proceeding as Exhibit 3 to the instant Petition, and the Court finds that Petitioner has reasonable cause to be-

lieve that the alleged labor violations occurred as set forth therein.

What Respondent does not concede, and indeed what is the much closer question to be decided at this stage, is whether the imposition of Section 10(j) relief is "just and proper."

While recognizing that both parties have presented well-founded and articulate arguments with respect to this question, the Court concludes that equitable relief is "just and proper" and, therefore, this Court will grant *in part* the Petition for a Section 10(j) injunction.

█ Respondent argued at the hearing that the facts alleged do not support a finding that injunctive relief is "just and proper." Respondent stated that only one employee was discharged (without conceding the reason for the discharge); that there had been only one allegation of improper conduct since the election; that the number of employees has increased since the election; and that a new plant manager and plant engineer had been hired since that time. Furthermore, Respondent contended, the Union's organizing effort remains "vibrant," and the Union has not suffered irreparable damage.

The Court agrees with Respondent that both a Section 10(j) injunction and an order to engage in collective bargaining in the absence of formal union certification indeed are extraordinary remedies. Moreover, this Court would emphasize that a federal district court simply is not the ideal forum for the resolution of a contested union election. Nevertheless, Congress explicitly has allowed for the district courts to play a role—albeit a limited role—within the overall process of the resolution of unfair labor practice disputes pending before the Board. Section 10(j) contemplates merely "appropriate *temporary* relief" (emphasis supplied). It is not an overreaching provision designed to elevate the district court to the status of "referee." Furthermore, the Court notes that the Board comes to the district courts for such relief only in those rare instances when it reasonably believes the administrative process will

not adequately and effectively resolve the given labor dispute in a timely fashion.[2]

The Court is in agreement with the expressions of other courts with respect to the utility and rationale of a Section 10(j) injunction. The purposes of the National Labor Relations Act "may be frustrated and a final order of the [Board] rendered meaningless by illegal acts of one of the parties pending the outcome of Board proceedings. This is the danger which section 10(j) was designed to prevent." *Levine v. C & W Mining Co., Inc.,* 610 F.2d 432, 437 (6th Cir.1979). While the Court offers no opinion as to the ultimate outcome of the proceedings before the Board in the present matter, the Court agrees that unfair labor practices which "tend to undermine majority strength and impede the election process do threaten to frustrate national labor policy." *Id.* Petitioner has reasonable cause to believe that unfair labor practices occurred at the Macclenny facility, and has submitted evidence which, when considered together in a light most favorable to the Board, *Lichtenberg,* 952 F.2d at 372, tends to demonstrate that Respondent's actions were so pervasive and numerous as to render meaningless any final order of the administrative process.

Therefore, while the Court notes that Section 10(j) relief should be sought and granted only in limited circumstances, in the absence of an injunction in the instant case a final order from the administrative process indeed would be "ineffectual or futile," *Pilot Freight,* 515 F.2d at 1188, with the effect that Respondent will have been allowed to profit with impunity from its actions with respect to the Union's organizing efforts. Accordingly, injunctive relief is "just and proper."

In addition to asking the Court to enjoin Respondent from engaging in unfair labor practices, the Board also petitions the Court to order Respondent to "[r]ecognize and, upon request, meet and bargain in good faith with the Union as the exclusive collective-bargaining representative of Respondent's employees ... concerning their wages, hours and other terms and conditions of employment." Petition at 13.

In *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the Supreme Court held that collective bargaining orders are appropriate when a union election has not been certified and authorization cards are the only indicia of a pro-union majority. Though not specifically a Section 10(j) case, *Gissel* nonetheless addressed the same concerns with respect to the timing problems within the Board's ordinary procedures, and the relative lack of harm in ordering collective bargaining:

> If the Board could enter only a cease-and-desist order and direct an election or rerun, it would in effect be rewarding the employer and allowing him "to profit from [his] own wrongful refusal to bargain," *Franks Bros. [Co. v. NLRB,* 321 U.S. 702, 704 [64 S.Ct. 817, 818, 88 L.Ed. 1020] (1944) ], while at the same time severely curtailing the employees' right freely to determine whether they desire a representative. The employer could continue to delay or disrupt the election process and put off indefinitely his obligation to bargain; and any election held under these circumstances would not be likely to demonstrate the employees' true, undistorted desires.

395 U.S. at 610–11, 89 S.Ct. at 1938 (footnotes omitted). Rejecting a claim similar to that made by the instant Respondent, the Supreme Court dismissed the notion that a bargaining order is an "unnecessarily harsh remedy," noting instead that:

> There is, after all, nothing permanent in a bargaining order, and if, after the effects of the employer's acts have worn off, the employees clearly desire to disavow the union, they can do so by filing a representation petition. For, as we pointed out long ago, in finding that a bargaining order involved no "injustice to employees who may wish to substitute for the particular union some other ... arrangement," a bargaining relationship "once rightfully established must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed," after which the "Board may, ... upon a proper

2. When judicial review of the ultimate finding by the Administrative Law Judge is considered, the

administrative process in some instances takes several years to complete.

showing, take steps in recognition of changed situations which might make appropriate changed bargaining relationships."

395 U.S. at 613, 89 S.Ct. at 1939–40 (quoting *Franks Bros.*, 321 U.S. at 705–06, 64 S.Ct. at 819).

In another case in which challenges were made to a decisive number of the total election ballots cast, the United States Court of Appeals for the Second Circuit held that a bargaining order issued by a district court "becomes a just and proper means of restoring the pre-unfair labor practice status quo and preventing further frustration of the purposes of the Act." *Kaynard v. MMIC, Inc.*, 734 F.2d 950, 954 (2d Cir.1984). Other courts have reached similar conclusions. *See, e.g., Asseo v. Pan American Grain Co., Inc.*, 805 F.2d 23, 28 (1st Cir.1986) ("extreme remedy" of interim bargaining order appropriate where Board has made showing that (1) unfair labor practices so undermined union majority as to make fair election unlikely; (2) employer's unlawful conduct is likely to continue; and (3) ordinary remedies are inadequate to ensure a fair election); *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 40 (2d Cir. 1975) (after Board makes showing that employer's unfair labor practices undermined fairness of election, bargaining order under Section 10(j) is "just and proper means of restoring the pre-unfair labor practices status quo and preventing further frustration of the purposes of the Act").

The Court presently finds that an order to Respondent to engage in collective bargaining with the Union will neither permanently alter nor unduly disrupt the labor relationship existing at Respondent's Macclenny facility. It may be that this matter will be resolved following the Board's hearing at the end of next month. Indeed, the Court would hope that the matter can be amiably resolved without further recourse to the resources of this Court, which, as previously noted, is not the optimal forum for the resolution of union certification disputes.

Nonetheless, the Court finds (1) that Petitioner has reasonable cause to believe that unfair labor practices occurred as alleged in its Petition and (2) that *most* of the requested injunctive relief is "just and proper." That portion of the sought relief which the Court *will not order* is the "full interim reinstatement" of Robin Bryan ("Bryan") to her prior position at the Macclenny facility. As contrasted with other cases, some of which are cited above, in which employers engaged in mass dismissals of employees in coincidence with union elections, there is no record in the instant case of the dismissal of any Macclenny employee other than Bryan. The Court does not find that it would be "just and proper" for this Court to take the extraordinary step of ordering the reinstatement of Bryan, particularly since her cause effectively can be prosecuted before the Board, and she herself has options for individual recourse for wrongful termination.

*Conclusion*

In accordance with the foregoing, the Petition for Injunction (Doc. No. 1) is **GRANTED IN PART**, and it is hereby **ORDERED**, under the authority vested in this Court by 29 U.S.C. § 160(j), that:

### *ACTS ENJOINED*

1. Respondent and its officers, representatives, agents, servants, employees, and all persons acting in concert with them be, and they hereby are, enjoined and restrained from:

(a) Interrogating employees about their Union activities and support;

(b) Soliciting employees to revoke their Union authorization cards;

(c) Threatening employees, including by implication, with the loss of their jobs and/or benefits, plant closure or unspecified reprisals if the Union ultimately is selected as their collective bargaining representative;

(d) Soliciting and impliedly promising to remedy employee grievances, including with regard to discipline, supervision, wages and benefits;

(e) Improving employee terms and conditions of employment, or implying that such improvements have been or will be made, in order to influence employees to abandon their support for the Union;

(f) Disparately enforcing its policy regarding in-plant solicitation, including by restricting pro-Union employees' movement in and between the buildings at Respondent's Macclenny, Florida, facility and by removing pro-Union literature but permitting anti-Union materials to remain on display;

(g) Disciplining, discharging or in any other manner retaliating against its employees because of their Union activity or support;

(h) In any other manner interfering with, restraining or coercing its employees in the rights guaranteed them under Section 7 of the Act.

### AFFIRMATIVE ACTS MANDATED

2. Respondent shall take the following actions:

(a) Recognize and, upon request, meet and bargain in good faith with the Amalgamated Clothing and Textile Workers Union, AFL–CIO, as the exclusive collective bargaining representative of Respondent's employees at Respondent's Macclenny, Florida, facility in the Unit described below, concerning their wages, hours and other terms and conditions of employment. The Unit is:

*Included:* All production and maintenance employees employed at the Macclenny facility, including production workers (both general time and incentive), spreaders, receiving employees, shipping employees, marker makers, quality control employees and plant clericals.

*Excluded:* All office clerical employees, professional employees, technicals employees, guards and supervisors as defined in the Act.

(b) Post copies of this Order at the Macclenny facility in locations where employee notices customarily are posted, said posting to be maintained during the pendency of the Board's administrative proceedings free from all obstructions or defacements, and agents of Petitioner shall be granted reasonable access to the facility to monitor compliance with the posting requirement;

(c) Within twenty (20) days of the issuance of this Order, file with the Court, with a copy to Petitioner, a sworn affidavit from a responsible official of Respondent setting forth the manner in which Respondent has complied with the terms of this Order.

As a final matter, the Court reiterates a caveat set forth in the First Circuit's *Asseo* decision: "[W]e take a section 10(j) request [by the Board] to be *a promise of a speedy disposition,* with the risk of dissolution, or modification, by the court, on motion of the employer, if the promise is not kept." *Asseo,* 805 F.2d at 29 (emphasis supplied). Accordingly, since the Board is in the unique position of being all of: (1) successful petitioner in this court; (2) charging party in the administrative action; and (3) the *forum* itself for the administrative action, and notwithstanding the inherent administrative delays noted above, the Board shall take every necessary measure to ensure the speedy disposition of this matter.

DONE AND ORDERED.