United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 19, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-51544
Summary Calendar

CORNELLE A. OVERSTREET, Regional Director of the Twenty-Eight
Region of the National Labor Relations Board, for and on the
behalf of the NATIONAL LABOR RELATIONS BOARD,

Plaintiff-Appellant,

versus

EL PASO ELECTRIC COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:05-CV-61

----------------------------
Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Cornelle Overstreet, Regional Director of the National Labor
Relations Board (NLRB or the "Board"), alleges that El Paso
Electric Company (EPEC), a public utility that generates and
distributes electricity in Texas and New Mexico, engaged in unfair
labor practices, as the result of an attempt by its 66 customer
service representatives (CSRs) to unionize. EPEC and the

_____

[*] Pursuant to the 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under limited circumstances set forth in 5TH CIR. R.
47.5.4.

International Brotherhood of Electrical Workers, Local Union 960, ("Union") have a long history of collective bargaining with respect to one-third of its workforce, though the CSRs were unrepresented prior to the instant Union campaign. The Union began its campaign to organize the CSRs in May 2004. Of particular relevance, EPEC discharged CSR Cecilia Rodriguez on July 9, 2004, allegedly in retaliation for her support of the Union.[1] As the result of a secret-ballot election on August 20, 2004, the CSRs chose to have the Union represent them in collective bargaining. The Union, however, has been unable to form a bargaining committee, allegedly due to the CSRs' fear of participation in Union activities.

As a result of the labor dispute initiated in July 2004 pursuant to the National Labor Relations Act (NLRA or the "Act"),[2] the ALJ recommended, *inter alia*, that EPEC offer reinstatement to Rodriguez, together with a make whole remedy with regard to any lost wages and benefits. The administrative matter is pending before the Board on EPEC's exceptions to ALJ's decision. However, since the administrative process moves slowly, temporary injunctive relief may be sought to preserve both the status quo and the

---

[1] We caution that our review of this matter does not extend to the merits of the labor dispute but, rather, pertains to a petition for temporary injunctive relief filed in district court on February 25, 2005.

[2] 29 U.S.C. §§ 151-169. The Union filed a complaint with the NLRB on July 14, 2004, and the Regional Director issued the complaint on November 19, 2004.

Board's remedial power.[3] Consequently, this appeal arises out of the District Court's final order, granting, in part, and denying, in part, a petition for temporary injunctive relief pursuant to 29 U.S.C. § 160(j) ("10(j)").

A District Court should grant a request for § 10(j) interim equitable relief only when (1) there is reasonable cause to believe that the alleged unfair labor practices have occurred[4] and (2) the requested injunctive relief is "just and proper."[5] The District Court granted injunctive relief, ordering EPEC (1) to cease and desist all of the alleged unlawful conduct (including discharging and threatening to discharge employees if they engage in Union activities), (2) to bargain with the Union, (3) to restore conditions of employment as they existed prior to the pronouncement of new rules, (4) and to rescind written warnings issued to another employee.

However, the District Court declined to order EPEC to reinstate former employee Rodriguez for two reasons. First, the District Court concluded that the factual origin of employee fear concerning termination, if involved in Union activities, was

---

[3] *Boire v. Pilot Freight Carriers, Inc.*, 512 F.2d 1185, 1188 (5th Cir. 1975) (affirming both the district court's injunction precluding employer from further violating the Act and the district court's refusal to issue a bargaining order or to order the reinstatement of discharged employees).

[4] Both the ALJ and the District Court found reasonable cause to believe that unfair labor practices had occurred, and this finding is not disputed on appeal.

[5] *Pilot Freight Carriers*, 512 F.2d at 1188-89, 1192 (citing 29 U.S.C. § 160(j)).

indiscernible, possibly attributable to either the firing of Rodriguez or to Union representative statements spreading fear of further reprisals.[6] Second, the District Court relied on Overstreet's seven-month delay in raising the issue of Rodriguez's discharge, holding that reinstating Rodriguez would not now alter the ability of the Union to operate.[7] The District Court concluded by stating its aversion to "short-circuiting Board procedure."[8]

We have given the shorthand label of "equitable necessity" to the second prong of this bipartite analysis.[9] "Section 10(j) is itself an extraordinary remedy to be used by the Board only when, in its discretion, an employer or union has committed such egregious unfair labor practices that any final order of the Board will be meaningless or so devoid of force that the remedial

---

[6] Inappropriate union conduct, warranting a denial of injunctive relief, includes "spreading rumors or sensationalizing wholly unsubstantiated charges against a company." *See Arlook v. S. Lichtenberg & Co., Inc.*, 952 F.2d 367, 374 (11th Cir. 1992) (applying Fifth Circuit precedent, including *Pilot Freight Carriers,* 512 F.2d 1185).

[7] "Although the time span between commission of the alleged unfair labor practices and filing for § 10(j) sanctions is not determinative of whether relief should be granted, it is some evidence that the detrimental effects of the discharge have already taken their toll on the organizational drive. It is questionable whether an order of reinstatement would be any more effective than a final Board order at this point." *Pilot Freight Carriers*, 512 F.2d at 1193 (holding that the district court did not abuse its discretion in finding a three- month delay significant evidence in opposition to injunctive relief).

[8] "We believe that measures to short circuit the NLRB's processes should be sparingly employed." *Pilot Freight Carriers*, 512 F.2d at 1192.

[9] *Pilot Freight Carriers*, 512 F.2d at 1192.

4

purposes of the Act will be frustrated."[10] Reinstatement of unlawfully discharged employees is "generally left to the administrative expertise of the Board."[11] We review the denial of injunctive relief for abuse of discretion.[12] A district court abuses its discretion when it misconstrues its proper role, ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support.[13] The District Court's factual findings underlying the determinations of reasonable cause and equitable necessity will not be disturbed unless clearly erroneous.[14]

Overstreet relies primarily on *Arlook v. S. Lichtenberg & Co., Inc.*,[15] for the proposition that the District Court clearly erred in its factual determinations and abused its discretion in refusing to order the reinstatement of Rodriguez. As in *Arlook*, several CSRs testified that they fear for their jobs and fear active participation in Union activities due to possible reprisals. However, other evidence demonstrates that the Union publicized

---

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *See Pullum v. Greene*, 396 F.2d 251, 256 (5th Cir. 1968).

[14] *Boire v. International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 479 F.2d 778, 793 (5th Cir. 1073).

[15] 952 F.2d 367.

Rodriguez's firing and, in so doing, inculcated the air of intimidation.[16]  Overstreet argues that the Union's warnings constituted responsible advice, made after the CSRs expressed their concerns to the Union.  Though this constitutes a plausible reading of the facts at issue in the instant case, we are not persuaded that the District Court clearly erred in its assessment.

Likewise, as noted in *Arlook*, any delay in prosecuting the § 10(j) petition is not dispositive,[17] and the facts might fairly be interpreted in favor of the present necessity for relief, both to empower the employees and to rectify the ongoing reticence to openly support the Union.  In addition to the other measures ordered by the District Court, Rodriguez's reinstatement might possibly help allay the alleged trepidation.  Again, however, we are not convinced that the District Court clearly erred in determining that the elapsed time allowed the detrimental effect of

_____

[16] These facts distinguish the case from *Arlook*, in which the Eleventh Circuit stated, "there was no evidence submitted to the district court which would permit such a finding."  952 F.2d at 374 (reversing the district court's refusal to issue an injunction because the district court erroneously "believed that the Union was as responsible for the "chilling" of organizational activities as the Company").

[17] Overstreet cites numerous extra-jurisdictional cases in which the delay did not impede injunctive relief: *Sharp v. Webco Indus., Inc.*, 225 F.3d 1130, 1136 (10th Cir. 2000) (finding a seven-month delay no bar to injunction);  *Pascarell v. Vibra Screw*, 904 F.2d 874, 881-882 (3d Cir. 1990) (finding an eight-month delay no bar to injunction and stating "[t]o require the [Regional Director] to sacrifice thorough evaluation for speed would dissipate the [Regional Director's] expertise, and dilute the statutory deference principle"); *Maram v. Universifdad Interamericana de Puerto Rico*, 722 F.2d 953, 960 (1st Cir. 1983) (finding a four-month delay no bar to injunction); *Hirsch v. Dorsey Trailers*, 147 F.3d 243, 248-49 (3d Cir. 1998) (finding a 14-month delay no bar to injunction).

6

the discharge to be fully realized—with no lingering threat of additional harm now warranting injunctive relief.[18] Thus, we cannot conclude that the District Court abused its discretion in refusing to reinstate Rodriguez, ultimately differing to the providence of the Board.

AFFIRMED.

---

[18] We do note, however, that the District Court did order EPEC into collective bargaining with the Union yet, at the same time, did not foster the best possible environment in which such negotiations might prosper. The Union has allegedly been unable to form a bargaining committee due to employee reluctance to participate. We will not, however, substitute our judgment for that of the District Court, as it was unconvinced that Rodriguez's reinstatement would alter employee participation in Union proceedings or that the Union did not have a hand in its own ineffectiveness.