Efrain RIVERA–VEGA, Acting Regional Director for Region 24 of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CONAGRA, INC. and/or Conagra Grain Processing Companies, Inc. and Molinos de Puerto Rico, Inc., Respondents.

Civ. No. 94–1798–DRD.

United States District Court,
D. Puerto Rico.

March 6, 1995.

Antonio F. Santos–Bayron, N.L.R.B., Region 24, Hato Rey, PR, for petitioners.

Roger J. Miller, McGrath, North, Mullin & Kratz, P.C., Omaha, NE, for defendant ConAgra, Inc.

Angel Munoz–Noya, Lespier & Munoz–Noya, San Juan, PR, for defendant Molinos de Puerto Rico, Inc.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before this Court is defendants' *Motion to Stay Judgement* (Docket # 24) and Petitioners' opposition thereto (Docket # 26).

### I. STAY STANDARDS

The standard that guides trial courts on stay motions under FRCP Rule 62(c) was set forth by the Supreme Court in the case of *Hilton v. Braunskill,* 481 U.S. 770, 776–77, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987). We examine basically four criteria (1) whether applicant makes a strong showing of success on the merits; (2) whether applicant will be irreparably injured absent relief; (3) whether issuance of the stay will injure the other parties; (4) where public interest lies.

> Different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal. See Fed.Rule Civ.Proc. 62(c); Fed.Rule App.Proc. 8(a). Under both Rules, however, the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. See, e.g., *Virginia Petroleum Jobbers Assn. v. FPC,* 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958); *Washington Metropolitan Area Comm'n v. Holiday Tours, Inc.,* 182 U.S.App.D.C. 220, 221–222, 559 F.2d 841, 942–844 (1977); *Garcia–Mir v. Meese,* 781 F.2d 1450, 1453 (CA11 1986); *Accident Fund v. Baerwaldt,*

579 F.Supp. 724, 725 (WD Mich.1984); see generally 11 C. Wright & Miller, Federal Practice and Procedure Sect. 2904 (1973).[1]

## II. LIKELIHOOD TO SUCCEED

■ We first examine the criteria of "likelihood to succeed." In evaluating defendants' probable likelihood of success we consider that in addressing a 10(j) petition by a NLRB Regional Director, a district court focuses on two issues (1) whether there is "reasonable cause to believe that a respondent has violated the Act" and "whether temporary injunctive relief is just and proper." *Asseo v. Pan American Grain Co.*, 805 F.2d 23, 25 (1st Cir.1986). As to the criteria of "reasonable cause to believe that the Act has been violated," the district court needs only to find that the Board's position is "fairly supported by the evidence." *Asseo v. Centro Medico del Turabo*, 900 F.2d 445, 450 (1st Cir.1990), *Maram v. Interamericana de Puerto Rico, Inc.*, 722 F.2d 953, 958–959 (1st Cir.1983); *Asseo v. Pan American Grain Co., Inc.*, supra. The district court should not resolve contested factual issues and should defer to the Board's version of the facts if "within range of rationality," *Maram v. Universidad Interamericana*, supra. The trial court upon resolving a 10(j) petition is not authorized to decide whether an unfair labor practice actually occurred. *Asseo v. Centro Medico del Turabo*, supra, at 450. Hence, our role is limited under the above set guidelines.

### A. Duty to Provide Financial Information

■ Defendants insist that the facts of the instant case conform to the fact pattern under the case of *Nielsen Lithographing Co.,*

305 NLRB 697, 1991 WL 253920 (1991). Defendants aver that their bargaining position is based not on a "could not" claim but under a "would not" claim. The ALJ, the ultimate trier of facts, upon an examination based on the record as a whole and after weighting all the evidence may decide that the instant case falls in the category of "would not" under the *Nielsen* case. However, the role of the court in examining the record is narrower. Our role is limited to determine if the assertions of the Regional Director are "fairly supported by the evidence." *Asseo v. Centro Medico del Turabo,* supra.

In the instant case there are facts on the record that fairly support[2] the conclusion that Respondent was under obligation to disclose financial data under the doctrine of the *Shell Co.,* 313 NLRB No. 12, 1993 WL 491815 (1993)[3]; or under *Teleprompter Corp. v. NLRB,* 570 F.2d 4 (1st Cir,1977).[4]

Since the record contains facts that "fairly support" the Regional Director's version that the case may fall under the doctrine of the case of *Shell Co.,* supra, and/or under the case of *Teleprompter v. NLRB,* supra, Respondent does not have a high probability of ultimate success on the issue on appeal.

### B. The Impasse

■ Respondents claim that the parties reached an impasse because notwithstanding that the Union on October 29, 1993 decreased its demands from its previous position and stated that "we have even more flexibility" the Union never agreed to a reduction in wages and/or terms and conditions under the expired agreement as urged by Respondent.

■ There is evidence on the record, however, that fairly supports the Regional Director's theory that there was no valid im-

---

1. We note that Respondent also urges a stay by the posting of a bond. However, "this kind of stay may not be obtained in injunction cases, receivership cases or in patent infringement cases, in which an accounting has been ordered. In those three classes of cases it is discretionary with the court whether to allow stay". See generally 7c Wright & Miller & Kane, Federal Practice and Procedure, Section 1905, (1973).

2. The facts are described at 876 F.Supp. 1350, 1365–66 of the Opinion and Order entered on 10 February 1995.

3. Apparent Respondents claim of lack of competitiveness but in reality the "essential core" bargaining position is grounded on assertions of a present threat to the employer's survival and an inability to pay at the present time or during the term of the successor agreement.

4. The employer itself puts profitability in contention; in the case at bar the employer claimed that its feed business was losing money, that sales had declined and that it needed deep concessions to survive.

passe. Firstly, bad faith bargaining caused by failure to disclose pertinent information, bars a valid impasse. *Bolton–Emerson, Inc. v. NLRB,* 899 F.2d 104 (1st Cir.1990); *NLRB v. Herman Sausage Inc.,* 275 F.2d 229 (5th Cir.1960); *United Contractors,* 244 NLRB 72, 1979 WL 9409 (1979), enforced 713 F.2d 1322 (7th Cir.1983); *Palomar Corp. & Gateway Serv. Co.,* 192 NLRB 592 (1971) (refusal to disclose data barred impasse).

Secondly, Respondents in their Motion to Stay understate the interchange of communications of both parties leading to the alleged claimed impasse of October 28, 1993. The Union decreased its demands and stated that "the Union has offers to make that are different." Management then countered in writing stating that "the time to bargain is over" and declined the Union invitation to meet and further negotiate (Joint Exhibit 29)[5]. Latter, the Union on October 29, 1992 stated in a letter that "we still have more flexibility."

Under the above fact scenario, the conclusion that there was no de facto impasse urged by the NLRB Regional Director is "fairly supported" by the record and grounded under the case of *Teamsters Local Union No. 639 v. NLRB,* 924 F.2d 1078, 1084 (D.C.Cir.1991).

"If either negotiating party remains willing to move further toward an agreement, an impasse cannot exist; the parties' perception regarding the progress of the negotiations is of central importance to the Board's impasse inquiry."

### C. Union Waiver to Receive Information by Failing to Address Respondents Confidentiality Concern

■ Respondents allege that the Union waived its right to receive the requested information when it failed to address the Company's concern of confidentiality based on the Union's representation of employees working for Respondents' competitors.[6]

The argument fails when Respondent refused unconditionally to provide the requested information. Management in a letter of December 29, 1993 denied unequivocally and unconditionally to provide the following information:

a) Financial Statements

b) Profit margins of ConAgra Group Feed Industries.

c) Salaries and benefits of all companies that make up ConAgra.

d) All ConAgra collective bargaining agreements for the last ten years.[7]

After a review (JE # 96) of the record, the Court understands that the offer to disclose information made by the Company subject to a confidentiality agreement on the meeting of February 23, 1994 refers to "financial information" and not to other requested information described in the previous paragraph.[8] (Profit margins of other ConAgra Co.; salaries & benefits of other ConAgra companies; ConAgra collective bargaining agreements) Further, the disclosure of information offered by Respondent was again conditioned on relevancy which had previously been met by Respondents' own comparison of Molinos' operation to other ConAgra continental corporations. We, therefore, reject the allegation of waiver claimed by Respondent.

### III. IRREPARABLE DAMAGES

■ Respondents have failed to prove that the concession of the 10(j) relief will

---

5. Letter of Respondents of October 28, 1993.

6. The request of Respondent is also based according to the Company on the Union's "proclivity to gratuitously divulge competitive labor costs" garned by Respondents. (See Motion to Stay, p. 15–16)

7. The requested information (profit margins, salaries and benefits, and collective bargaining agreements of ConAgra) became relevant when on the first bargaining session Respondents' representative stated: "... our company will now

be measured different from what we were measured in the past. This is because the Grain Processing Company (ConAgra) has more than sixty companies and they will be comparing us to them, not with results of the other companies in the island."

8. At the February 23, 1994 meeting the parties discussed other requested information and described them specifically, when discussing potential disclosure the same was limited to "financial information".

cause to Respondent irreparable damages. Repossessing former employees in their jobs to replace temporary replacement employees at a higher labor cost fails to meet the irreparable damages standards. The Court further finds speculative that Respondents will "permanently lose customers market share and sales volume" as claimed.

On the other hand, in *Kaynard v. Bagel Bankers Council of Greater N.Y.*, 57 Lab. Cas. (CCH) P. 12, 499 No. 29, the Court held that an eleven-month lockout produced serious harm to the Union, the employees and the bargaining process.

> "The effects include the drifting away of union membership, the debilitation of the union's bargaining vigor, and the loss of revenue necessary to sustain its administration and the benefits it is committed to provide its members. The public at large, too, has suffered loss through the undermining and rendering nugatory of provisions of the Act."

See also *Silverman v. Reinauer Transportation*, 130 LRRM 2505, 2507, 1988 WL 159172 (D.N.Y.1988) affd. unpub., 880 F.2d 1319 (2nd Cir. June 23, 1989), wherein the court found that union members without work for nine months may suffer irreparable damages by being forced to find new jobs and/or by relocation and by further waiting until the NLRB makes a final decision and until the decision is enforced by an order from a Circuit Court of Appeals.[9]

Finally in *Asseo v. Pan American Grain Co., Inc.*, supra, at 27–28 in affirming a 10(j) injunction the First Circuit in ordering the reinstatement of four employees, found irreparable harm to the employees and the bargaining process. Quoting from *Eisenberg v. Wellington Hall Nursing Home Inc.*, 651 F.2d 902, 906 (3rd Cir.1981) the court stated:

> "If union supporters are excluded from the bargaining process, pending resolution of unfair labor practice charges, the position of the designated bargaining representative will in all likelihood be substantially

undermined. All members of the bargaining unit may be affected by such an erosion of union support. Furthermore, the discharge of "active and open union supporters ... risk[s] a serious adverse impact on employee interest in unionization." *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1053 (2d Cir.1980)."

## IV. THE PUBLIC INTEREST

The First Circuit has reiterately held that the public interest is served by the granting of interim 10(j) relief thereby strengthening the collective bargaining process. *Asseo v. Centro Medico del Turabo*, 900 F.2d 445, 455 (1st Cir.1990); *Asseo v. Pan American Grain Co.*, 805 F.2d at p. 28.[10]

> "Finally, we agree with the district court's conclusion that the public interest will be furthered by the imposition of the interim injunctive relief. If the goal of the labor laws and regulations is to strengthen the bargaining process, see *Asseo v. Pan American Grain*, supra at 28, then ordering bargaining to commence cannot be contrary to public interest."

## CONCLUSION

Having examined the governing criteria for a stay under FRCP 62(c) set forth under the Supreme Court case of *Hilton v. Braunskill*, supra, the Court DENIES THE STAY requested by Respondent.

---

9. We note that at the meeting of February 3, 1994, J.F., 96, Respondents informed their intentions to litigate the instant case up to the Supreme Court, if necessary, for a time that could take according to Respondent up to five years.

10. "Finally we find that the public interest will not be adversely affected by the granting of injunctive relief", *Pan American Grain Co., Inc.*, at p. 28.