**In the Matter of Ronald S. COHEN, Acting Regional Director of the First Region of the National Labor Relations Board, for and on behalf of, the National Labor Relations Board, Plaintiff,**

v.

**SAMUEL BENT LLC, Defendant.**

**No. CIV.A. 00–40119NMG.**

United States District Court, D. Massachusetts.

Aug. 11, 2000.

Thomas J. Morrison, Boston, MA, for Plaintiff.

Michael F. Kraemer, White and Williams LLP, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

GORTON, District Judge.

This case arises from alleged unfair labor practices of the defendant, Samuel Bent LLC ("Bent LLC"), and specifically its refusal to recognize the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers Local 154, AFL–CIO ("the Union"), which represented the employees of Bent LLC's pre-

decessor corporation. The plaintiff, Ronald Cohen, is the Acting Regional Director of the National Labor Relations Board ("the NLRB") for this region and brings this action on its behalf. Pending before the Court is the motion of the NLRB for a preliminary injunction ordering Bent LLC to recognize and negotiate with the Union (Docket No. 1).

## I. Background

S. Bent & Brothers ("Bent Brothers") owned and operated a furniture factory in Gardner. The Union represented some of the approximately 120 employees at Bent Brothers. The Union's most recent collective bargaining agreement is in effect from October 1, 1999 through September 30, 2000.

In 1999, Bent Brothers experienced financial difficulties due to its failure to integrate a new computer system at the factory and the loss of skilled employees. In June 1999, Peter Alcock, president of Bent Brothers, began exploring the possible sale of the company. Two months later, Industrial Renaissance, Inc. made an offer to acquire the company, but Bent Brothers rejected it.

After failing to agree to a sale, Bent Brothers notified the company's major creditor, Wells Fargo Business Credit ("the bank"), that it would begin to liquidate the company to pay off most of its debt. The bank first instructed Bent Brothers to develop a liquidation plan, but before that could be accomplished, it demanded that the company pay all outstanding obligations or face a forced sale. Bent Brothers could not meet its obligations and the bank conducted a secured party private sale on or about February 8, 2000.

By letter dated February 11, 2000, Industrial Renaissance notified Bent Brothers that Bent LLC, a newly formed subsidiary, had purchased the assets of Bent Brothers. The operation of Bent Brothers ceased at the close of business on Friday, February 11, 2000. The workforce had been reduced to 51 employees as of that date, the remaining employees having been laid off during the preceding six weeks.

Bent LLC began operations on Monday, February 14, 2000. In order to conduct business on that day, Arcelia Miarecki ("Miarecki"), the Director of Administration at both companies, spent the weekend contacting by telephone the 51 employees who had been employed by Bent Brothers to offer them jobs with Bent LLC and to have them report to work on the following Monday. She reached 12 employees on Friday night and informed them that they would be retained at the same pay rate, seniority and benefits, but that she did not know the status of the Union. Between six and eight of the former Bent Brothers employees responded that the status of the Union was unimportant at that point compared with getting their jobs back. Another noted that the Union was not important to him and one stated that the company did not need the Union in any event.

Miarecki, assisted by Tony Meningoni ("Meningoni"), a manager, and Bruce Blouin ("Blouin"), a union steward, called the remaining former employees on Saturday. Of the 13 or so employees that Miarecki reached on Saturday, "a few … commented that the status of the Union didn't matter right then, it was more important to get their jobs back." None of her contacts that day commented negatively about the Union. Neither Blouin nor Meningoni reported that any of the employees who they contacted said anything about the Union. Of the 51 employees retained by Bent LLC, only 20 were members of the Union or voluntarily agreed to have their union dues withheld from their paychecks.

When the Union contacted a representative of Bent LLC in March, the new company refused to negotiate with or recognize the Union. Ten days later, the Union filed a grievance accusing Bent LLC of

failing to deduct union dues from the paychecks of the volunteering employees as required by contract. After the Union made a further attempt to negotiate, Bent LLC notified the Union that it had a "reasonable good faith doubt" that a majority of employees supported the Union and that it, therefore, would not recognize the Union.

The Union filed a charge with the NLRB on March 26, 2000, whereupon the NLRB began an investigation of Bent LLC. Thereafter, the NLRB filed the instant lawsuit and a motion for a preliminary injunction seeking an order to force Bent LLC to recognize the Union as the collective bargaining representative of the employees and to negotiate with it.

## II. The Motion for a Preliminary Injunction

### A. Standard

■ Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j) ("the Act") authorizes district courts to grant preliminary injunctions pending the NLRB's resolution of claims of unfair labor practices. To determine whether preliminary relief is warranted, the Court must limit its consideration to: 1) whether there is "reasonable cause to believe" that a defendant has violated the Act and 2) whether temporary relief is "just and proper". *Pye v. Sullivan Bros. Printers*, 38 F.3d 58, 63 (1st Cir.1994). The district court is not empowered to decide whether an unfair labor practice actually occurred. *Id.*

### B. Reasonable Cause to Believe an Unfair Labor Practice Occurred

In assessing whether the NLRB has shown reasonable cause, the district court need only find that the NLRB's position is "fairly supported by the evidence." *Id.*

The parties vigorously contest whether the NLRB's position is supported by the evidence. The NLRB argues (and Bent LLC does not appear to disagree) that Bent LLC is a successor corporation that employs the same 51 employees, some of whom were represented by the Union. Under *NLRB v. Burns Int'l Security Servs.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), the NLRB contends that, as a successor to Bent Brothers, Bent LLC is obligated to continue to recognize and bargain with the Union. Furthermore, relying on the same case, the NLRB asserts that there is a presumption that the Union continues to have the majority support of the employees of the successor company. *Id.*

Bent LLC responds that there is no reasonable cause to believe that it participated in an unfair labor practice. It relies primarily upon *Allentown Mack Sales & Service, Inc. v. National Labor Relations Board*, 522 U.S. 359, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998), in which the Supreme Court upheld the doctrine that, if an employer has a reasonable good faith doubt that a union has the support of a majority of employees, it may refuse to recognize that union. Bent LLC argues that the statements of the employees that the status of the Union was unimportant to them and the fact that only 20 of 51 employees were members of the Union, as evidenced by the number of employees who voluntarily agreed to the withholding of union dues, provides the basis for its reasonable good faith doubt that the Union had the support of a majority of employees.

Miarecki recollected that between 9 and 11 employees expressed no concern about the status of the Union at the time they were rehired and that two employees commented negatively on the Union.[1] The statements of a minority of employees that

---

1. Miarecki reported that between six and eight employees expressed no concern about the Union's status during her phone conversations on Friday and "a few" employees were of like mind on Saturday. Because "a few" means at least three, the Court concludes that there were, at most, 11 employees who expressed no concern about the status of the Union at the time of transition.

the status of the Union did not matter to them when they were offered their jobs back cannot, alone, support Bent LLC's good faith doubt that the Union lacked the majority support of its employees. Realistically, such expressions were limited, even by Miarecki's own affidavit, to the immediate concern of getting their jobs back.

■ Even the more positive statements of the other two employees who actually denigrated the Union is insufficient, standing in isolation, to support a good faith doubt that the Union enjoyed majority backing. Apparently, 13 of 51 employees expressed some sort of discontent with the Union. Although that is significant, this Court is satisfied that such evidence does not preclude the NLRB's position that an unfair labor practice is "fairly supported by the evidence."

### C. *Injunctive Relief*

■ The NLRB has a much more difficult burden to show that injunctive relief is "just and proper" here. That is because the district court must examine "the whole panoply of discretionary issues with respect to granting preliminary relief." *Pye,* 38 F.3d at 63 (citations omitted). Thus, the NLRB must pass the familiar, four-part test for granting preliminary relief by demonstrating 1) a likelihood of success on the merits, 2) irreparable injury absent injunctive relief, 3) that such injury outweighs any harm a preliminary injunction would inflict on the defendant and 4) that such relief is in the public interest. *Id.*

### 1. *Likelihood of Success on the Merits*

The NLRB argues that it is likely to succeed on the merits based upon its showing that Bent LLC was bound under the successor doctrine espoused in *Burns.* Bent LLC responds, to the contrary, that it is likely to succeed on the merits based upon its good faith doubt of majority support under *Allentown Mack Sales & Service.* Further, Bent LLC argues that when the interim relief sought by the NLRB "is essentially the final relief

sought, the likelihood of success should be strong." *Pye,* 38 F.3d at 63 (quoting *Asseo v. Pan American Grain Co., Inc.,* 805 F.2d 23, 29 (1st Cir.1986)). Bent LLC contends that the NLRB's likelihood of success does not meet that standard.

■ Although it is a close question, the Court has concluded that the NLRB's position that an unfair labor practice occurred is "fairly supported by the evidence." Nevertheless, the Court agrees with Bent LLC that in this circuit, when the injunctive relief requested is essentially the final relief sought, the movant must show that the likelihood of success is strong. *Pye,* 38 F.3d at 63. The NLRB seeks an order requiring Bent LLC to recognize and bargain with the Union. If the NLRB were to succeed on the merits of its administrative case, that is exactly the relief the Union would receive.

Bent LLC has demonstrated that a number of employees expressed no concern about the status of the Union when given the opportunity to inquire. If the employees rehired by Bent LLC had been concerned about the Union's continued ability to represent their interests, one might expect them to inquire about such representation *after* they returned to work. About one-quarter of the employees expressed a lack of interest in representation by the Union. Such disinterest may not be enough to foreclose the NLRB's unfair labor practice claim, but it is enough to cast serious doubt upon the *strong* likelihood of success on the merits of such a claim.

■ Furthermore, according to both parties, only 20 of the 51 employees were actually members of the Union and that fact was known to Bent LLC. The Court cannot conclude, based upon all of the evidence presented in the form of affidavits and the argument of counsel, that the NLRB has shown that its likelihood of success on the merits is strong.

## 2. *Irreparable Harm*

The NLRB argues that the Union will suffer irreparable harm if an injunction does not issue because an unlawful refusal to bargain with an incumbent union "disrupts the employees' morale, deters their organizational activities and discourages their membership in unions." *Fall River Dyeing and Finishing Corp. v. N.L.R.B.*, 482 U.S. 27, 49–50, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987). The essence of its argument is that without Union representation, the Union, if ultimately reinstated as the collective bargaining representative, will lose the support of those employees currently supporting it and will not gain the support of new employees if any are hired. The Union also argues that the employees, if forced to negotiate on their own, may not receive the benefits that it might obtain for them as collective bargaining representative when negotiating with a new employer.

The NLRB stated at oral argument that it has requested expedited review of this matter and will bring it before an administrative law judge on September 6, 2000 for what is expected to be a three-day hearing. After that hearing, a thirty-day briefing period will ensue before the matter is resolved. Based upon that schedule, a resolution is likely in mid-October. If the NLRB ultimately prevails, that would mean a delay of approximately two months before the Union is recognized and negotiations are compelled.

■ Notwithstanding its claims to the contrary, this Court finds that the absence of the Union as collective bargaining representative for two more months will not cause irreparable harm to it or to the employees. Harm, if any occurs and if the NLRB's claim is upheld, can be rectified after a relatively short delay of negotiations. Moreover, the employees are free to organize now and establish their support of the Union on their own.

## 3. *Balancing of Harms*

The NLRB asserts that Bent LLC will suffer no harm if an injunction issues because Bent LLC would only have to negotiate with the Union, not actually reach an agreement with it. Bent LLC persuasively responds that, if it were to have to negotiate with the Union, it would be bound to negotiate in good faith with an ultimate goal of reaching a collective bargaining agreement. Because the Court has concluded that the NLRB lacks the strong likelihood of success required in this circuit, it will not require Bent LLC to negotiate and reach a collective bargaining agreement with a Union that may not ultimately have majority support of the employees.

## 4. *Public Interest*

"[T]he public has an interest in ensuring that the purposes of the [National Labor Relations] Act be furthered." *Asseo v. Pan American Grain Co.*, 805 F.2d 23, 27 (1st Cir.1986). While the purposes of the Act being furthered is a worthy goal, the public interest is little served if an employer is forced to negotiate in good faith with a Union that might not have the support of a majority of its employees.

## ORDER

For the reasons set forth in the Memorandum above, the motion of the National Labor Relations Board for a preliminary injunction (Docket No. 1) is DENIED.

So ordered.