414 F.Supp.2d 96 (2006)
Rosemary PYE, Regional Director of the First Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner
v.
YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF WESTERN MASSACHUSETTS, Respondent
No. C.A.05-30264 MAP.
United States District Court, D. Massachusetts.
February 13, 2006.
*97 Ronald S. Cohen, National Labor Relations Board (U.S. GOV), Gene M. Switzer, National Labor Relations Board, Boston, MA, for Rosemary Pye, Petitioner.
Shelley B. Kroll, Segal, Roitman & Coleman, Boston, MA, for United Auto Workers Local 2322, Amicus.
Jay M. Presser, Skoler, Abbott & Presser, Springfield, MA, for Young Women's Christian Association of Western Massachusetts, Respondent.

MEMORANDUM AND ORDER REGARDING PETITION FOR INJUNCTION (Docket No. 1)
PONSOR, District Judge.

I. INTRODUCTION

Petitioner, the Regional Director of the First Region, of the National Labor Relations Board ("NLRB" or "Board"), has moved pursuant to § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j) (2006), for injunctive relief pending final disposition of matters now before the Board. Although the issue is close, the court has concluded that injunctive relief is not "just and proper," and will therefore deny the petition. See Asseo v. Centro Medico Del Turabo, 900 F.2d 445, 450 (1st Cir.1990).

II. FACTUAL BACKGROUND

The underlying facts in this matter are not disputed.[1]
*98 In April 2005, after roughly one year of negotiations, Local 2322 AFL  CIO (the "Union") reached an oral understanding with Respondent on the terms of a proposed collective-bargaining agreement. The proposed contract was ratified by the collective-bargaining unit membership on April 20, 2005, at which point only one nonsubstantive issue was outstanding. Respondent that day offered to draft the agreement for execution. The remaining minor issue was resolved on May 2, 2005.
On May 13, 2005, Respondent received cards from 34 of the bargaining unit's 64 employees showing that as of May 8, 2005, the Union no longer represented a majority of the unit employees. Indeed, the majority of the existing employees affirmatively stated that they "no longer want[ed] representation from Local 2332" and that they wanted "action to be taken to get [the Union] out of our agency so we can get our voices back!" It is undisputed that Respondent was unaware of this sentiment at the time it agreed to draft the agreement reached between the parties. Having received actual evidence that a majority of its employees did not wish to be represented by the Union, Respondent withdrew recognition from the Union on May 19, 2005, and refused to execute the agreement.
The parties stipulate that:
The sole and exclusive basis for Respondent's withdrawal of recognition of the Union as the exclusive collective-bargaining representative of the Unit and its refusal to execute the agreed upon contract, is the May 13, 2005 receipt of the 34 signed and dated cards referred to above. . . . Had Respondent not received those cards, the collective-bargaining agreement that the parties had reached full agreement on by May 2, 2005, would have been reduced to writing and executed by the parties.
On June 9, 2005, shortly after Respondent's withdrawal of recognition, the Union filed a charge with the Board alleging that Respondent was engaging in unfair labor practices. Following an investigation, Petitioner issued a complaint and notice of hearing on September 30, 2005. On December 7, 2005, the Administrative Law Judge (ALJ) assigned to the case allowed the parties' Joint Motion and Stipulation of Facts and ordered the record closed. Following submission of briefs on January 11, 2006, the ALJ took the matter under consideration. No decision has as yet issued.
On December 1, 2005, Petitioner invoked this court's power pursuant to § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), to issue an injunction pending the Board's resolution of the underlying charge.

III. DISCUSSION

The purpose of § 10(j) is "to prevent persons from accomplishing an unlawful and perhaps irremedial objective during the lengthy administrative process." Fuchs ex rel. NLRB v. Hood Indus., Inc., 590 F.2d 395, 396 (1st Cir.1979). In weighing whether to issue a temporary injunction, the District Court "is not empowered to decide whether an unfair labor practice actually occurred." Pye ex rel. NLRB v. Sullivan Bros. Printers, Inc., 38 F.3d 58, 63 (1st Cir.1994). Rather, the court is required to determine whether there is "reasonable cause" to believe a violation of the Act has been committed and whether preliminary relief is "just and proper." See, e.g., Centro Medico, 900 F.2d at 450.
The "reasonable cause" prong requires only a showing that the Board's position is "fairly supported by the evidence," while the "just and proper" prong is a "higher *99 hurdle" because "the district court must examine the whole panoply of discretionary issues with respect to granting preliminary relief." Sullivan Bros., 38 F.3d at 63 (quoting Centro Medico, 900 F.2d at 450, 454). Indeed, the "just and proper" test is sufficiently stringent that it may be viewed as having superseded the "reasonable cause" test. See Sullivan Bros., 38 F.3d at 64 n. 7 (describing the "reasonable cause" test as one of "questionable utility").
The "just and proper" test incorporates the well-established four criteria for issuance of injunctive relief: (1) a likelihood of success on the merits, (2) the potential for irreparable injury in the absence of relief, (3) a predominance of harm to the moving party, and (4) the existence of public interest supporting issuance of preliminary relief. Id. at 63.
The First Circuit has emphasized that "[w]hen . . . the interim relief sought by the Board `is essentially the final relief sought, the likelihood of success should be strong.'" Id. (quoting Asseo v. Pan Am. Grain Co., 805 F.2d 23, 29 (1st Cir.1986) (emphasis added)). In this case, Petitioner is seeking injunctive relief that would require Respondent to recognize and bargain with the Union and in addition apply, though not execute, all terms of the agreement reached with the Union. Thus, the preliminary relief sought by Petitioner is essentially the final relief sought, and therefore the showing of likelihood of success must be substantial.
In the circumstances of this case, the legal questions surrounding the parties' positions are rather vexed. Petitioner relies in large part on the case of Auciello Iron Works, Inc. v. NLRB, 517 U.S. 781, 116 S.Ct. 1754, 135 L.Ed.2d 64 (1996), which held that an employer may not "disavow a collective-bargaining agreement because of a good-faith doubt about a union's majority status at the time the contract was made, when the doubt arises from facts known to the employer before its contract offer had been accepted by the union." Id. at 782-83, 116 S.Ct. 1754.
The relationship between Auciello and this case, however, is uncertain. The stipulated facts distinguish this case from Auciello in two ways: first, the employer here did not know at the time its contract offer was accepted that the Union's majority's status was in question, and, second, the employer did not merely harbor "a good faith doubt about the union's majority status," but rather knew from objective information it had received that the Union absolutely lacked the support of a majority of its employees.
Many of the policy considerations underlying Auciello do not exist here. The employer did not place itself, for example, in a position where it could conceal its doubts about the Union's majority status and "go right on bargaining, with the prospect of locking in a favorable contract that it could, if it wished, then challenge." Id. at 789, 116 S.Ct. 1754. In this case, the employer, it would appear from the stipulation, only obtained information regarding the employee insurrection after the oral terms of the agreement had been accepted but before it had been reduced to writing. While this scenario might raise related policy concerns  namely that an employer might attempt to delay execution in order to manipulate the bargaining process  these are not the issues the Court addressed in Auciello and are not features of the factual landscape here.
The court cannot predict how the ALJ and, ultimately, the Board will view this situation, but it is manifestly different from the scenario presented in Auciello. The posture of this case straddles authorities that promote employee free choice by barring employers from supporting minority unions and authorities that seek to preserve *100 "industrial peace and stability" by creating various legal presumptions to protect the collective bargaining process. Compare Int'l Ladies' Garment Workers' Union v. NLRB, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961) (forbidding a company from signing a collective bargaining contract with a known minority union) and Nott Co., 345 NLRB No. 23, 2005 WL 2115868, at *9 (NLRB Aug. 27, 2005) (employee free choice is at the heart of the Act), with Auciello, 517 U.S. at 785, 116 S.Ct. 1754 (noting the role of "presumptions about the existence of majority support for a union" in fostering "the object" of the NLRA, i.e. industrial peace and stability), and Centro Medico, 900 F.2d at 455 (observing that "the goal of labor laws and regulations is to strengthen the bargaining process"). Thus, particularly in view of the need to make a "strong" showing of likelihood of success on the merits, it seems inappropriate to issue preliminary injunctive relief in this case.[2]
Additional reasons support denial of the petition. As part of its burden to show that issuance of preliminary relief is "just and proper," Petitioner must demonstrate irreparable injury in the absence of relief. The showing of such injury in this case is weak. Petitioner speculates that the lengthy period of time required to resolve its complaint might, without preliminary relief, result in erosion of support for this new Union Local. This is a factor the court may properly consider. On the other hand, if the Union ultimately obtains its remedy before the NLRB, it will be designated as the bargaining agent regardless of any supposed erosion of support. The showing of irreparable harm on these facts cannot be described as "strong."
Finally, issuance of preliminary relief will have immediate and problematic consequences for the employer, who will be required to recognize a Union that the employer believes, on the basis of objective evidence, is not supported by a majority of its employees. The possibility exists that, should the court grant the requested relief, employees who oppose the Union would be compelled to join or face discharge. Uncertainty and disruption in its relations with employees constitutes significant harm to the Respondent equal, in the unique facts of this case, to the harm Petitioner may suffer.
In summary, Petitioner has failed to demonstrate that it can satisfy three of the four factors required to justify issuance of preliminary relief. The fourth criterion, public policy, is a wash. Arguments can be made by both sides of equal weight.

IV. CONCLUSION

Based upon the failure to show likelihood of success on the merits, the modest showing of harm, and the lack of any predominance of harm to Petitioner, the Petition for Injunctive Relief pursuant to § 10(j) is hereby DENIED without prejudice. Ordinarily, denial of the preliminary relief would effectively end this case. However, in view of the narrowness of the issue, the court hereby directs the clerk to keep this file open. The court's ruling is without prejudice and may be revisited after the ALJ issues a decision.[3]
It is So Ordered.
NOTES
[1] Petitioner's motion to try this matter on the basis of a stipulated administrative record (Dkt. No. 2) has not been substantively opposed by Respondent and has been allowed by this court simultaneously with the issuance, of this memorandum.
[2] In reaching this conclusion, the court does not wish in any way to offer any opinion as to how the All or the Board should resolve the difficult underlying issue. The decision not to issue injunctive relief here derived solely from the particular burden on Petitioner in a proceeding under § 10(j).
[3] If Petitioner wishes to pursue an immediate appeal, an application for entry of judgment may be submitted.